No. 15,475.

INDUSTRIAL COMMISSION ET AL. *v.* FOTIS ET AL.

(149 P. [2d] 657)

Decided June 5, 1944.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. ST. GEORGE GORDON, Assistant, Messrs. HAWKINS & HAWKINS, for plaintiffs in error.

Mr. M. S. GINSBERG, for defendants in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFFS in error are hereinafter referred to as the commission, the coal company and the insurance company (industrial insurance carrier of the coal company), respectively; defendants in error as claimants, or by name, and Stanley Fotis, deceased, as Fotis.

Fotis and Cleadis Fotis were husband and wife and Stanley Martin Fotis, Benjamin Orville Fotis and Thomas Leonard Fotis (at the time of their father's death aged respectively 6, 3 and 1 years) are their sons.

This is a workmen's compensation case. Fotis was employed by the coal company and died, it is alleged, as the result of an accident occuring on November 7, 1942, and arising out of and in the course of his employment. His original injury was a sprained hip. By reason thereof he quit work November 12, 1942, returned five days later, and November 22 following he quit permanently. He died of septicemia December 5, 1942. The commission found no evidence that the "injury was accidentally incurred or arose out of or in the course of the said employment," and denied the claim for death benefits. The district court reversed the commission and ordered an award entered for claimants. To review that judgment the Industrial Commission, the coal company and the insurance company prosecute this writ and join in their briefs.

The assignments, so far as necessarily noticeable, are:
1. That the court was without jurisdiction of the case;

2. that certain exhibits, rejected by the commission, were erroneously held admissible by the court and considered; 3. that the judgment entered was beyond the court's jurisdiction.

1. It is contended that no petition for review of the commission's award was filed within the statutory period, hence the action was not filed within twenty days after the entry of the final award. We are of the opinion that the record does not support the alleged facts upon which these contentions are based.

2. It is undisputed that the injury in question was a sprained hip, that it occurred between the mid-afternoon of November 7, when Fotis went to work, and approximately 8:00 P.M. that day, and that infection therefrom in all probability caused his death. All evidence as to the cause of the injury was based upon statements made by him to other witnesses who made written reports based thereon, to the company's physician who made a report based upon what Fotis told him, and by Fotis to his wife on his return home the following morning. Hence these reports and this evidence were excluded as hearsay. Thereupon the referee found and adjudged (and this became the final award of the commission) that Fotis quit work November 12 by reason of a sprained hip, was totally disabled thereby until November 17, and from November 22 on, "that by reason of the said injury he developed septicemia which caused his death;" all of which there was evidence to support. He further found that, "The evidence does not show and the referee does not find that the said injury was accidentally incurred or arose out of or in the course of the said employment." That was true from all the evidence *admitted* and all, presumably, that was considered by the referee and the commission.

The excluded exhibits were B, C and D and the physician's report. B is the "first report of the accident," dated November 17 and signed by the coal company "by W. J. Morgan." C is a supplemental report dated Decem-

ber 9 and signed in the same way. D is the report of one William Roberts, night foreman of the coal company to whom Fotis reported the accident and injury on November 12, and which, in the discharge of his official duty, Roberts made to the coal company the same day. Morgan's first report was based solely on the report of Roberts and the latter solely upon the statements of Fotis made November 12. Exhibit C contains nothing material here save the report of the death of Fotis. The physician's report was dated November 15, and was signed by Dr. Cassidy, the coal company's physician. It recites that he first treated Fotis that day, that the injury was "sprain L. hip," the treatment prescribed, "rest, heat," that the present disability is due entirely to the injury, that it was not permanent, and that Fotis would "probably be unable to work for ten days." Dr. Cassidy testified on the hearing before the referee and stated, in substance, that he visited Fotis again November 17, 18, 23, 25 and 27, during which time the condition of the patient grew progressively worse, and that in his opinion the injury as related to him by Fotis caused his condition and contributed to his death. As to the cause of the injury he knew only what Fotis told him, and that was the same story he told the witness Shields. The latter, a fellow employee, testified before the referee that he talked with Fotis about 8:00 P.M. of November 7 when, observing he was lame and inquiring the cause, he received the reply that about an hour before Fotis had injured his hip "kicking a switch at the mine." This is likewise the origin of the injury stated as the basis of B and D and the physician's report, and given by Fotis to his wife on the morning of November 8, but excluded by the referee. The trial court held that Exhibits B, C and D, and the doctor's report should have been admitted and that said reports "show that the deceased sustained an injury arising out of and in the course of his employment, and from which he died," and ordered that the award of the commission be vacated

and the cause "remanded to said commission with instructions to grant plaintiffs' claim for death benefits," with costs.

■ We think the ruling of the referee and the commission as to the admissibility of the statements of Fotis to the witness Shields, and as to the doctor's statement and his testimony was erroneous and that of the district court was correct. If so the other exhibits were based upon the same facts, the same information, and were merely cumulative, hence could not have been prejudicial; we therefore give these no further notice.

The question presented requires only resolution as to whether the evidence of Shields and the statements and evidence of Dr. Cassidy were properly excluded under the hearsay rule, or whether they should have been admitted under a well recognized exception thereto. Counsel for plaintiffs in error present an exhaustive and somewhat persuasive argument that the excluded evidence could only have been admitted, if at all, under the rule of res gestae and cite authorities which seem to call for its exclusion on that ground.

■ Res gestae, while often spoken of as an exception to the hearsay rule is generally not such in fact. Ordinarily it relates to statements which, because of their intimate relation to facts become a part of those facts and are therefore admitted as such. A casual examination of this subject, as treated in the encyclopedias, discloses many modifications and ramifications of the rule, illustrated by literally hundreds of adjudicated cases. No court could possibly plough through these multifarious decisions in search of the true rule or deduce it therefrom. Suffice it to say that cases could be found which would justify the admission of this evidence under a liberal construction of the rule of res gestae. We prefer, however, to base our decision upon the broader and more certain ground of one of the exceptions to the hearsay rule.

■ The principal objection to the admission of hear-

say evidence is that it affords no opportunity for the acid test of cross-examination. In addition thereto it is generally not the best evidence, opens wide the door to self-serving declarations and gives unlimited opportunity for the support of manufactured and fraudulent claims. Where all these elements and perils are absent, and a strict adherence to the rule would probably result in a gross miscarriage of justice, certain essential exceptions have been made to it by the courts, under some of which we think this cause clearly falls.

All the circumstances disclosed by the record indicate that Fotis was injured while engaged in his usual occupation. He alone, if living, could so testify. Death has put him beyond reach. If he told the truth and this evidence is excluded a gross miscarriage of justice will result. The evidence offered is the best available under the circumstances. There was no apparent motive for him to falsify. It is evident that at the time he did not look upon his injury as serious. If he could have had in mind the possibility of a claim it could not have extended to more than a short period of disability. He returned to work not only at that time, but for several days thereafter. Even when examined by the company's physician Dr. Cassidy put the limit of his disability at ten days. There is no reason to believe that this estimate would have been erroneous save for the wholly uncontemplated infection. Moreover, plaintiffs in error had ample notice of his claim and every opportunity to investigate and verify it before death intervened. The rejected evidence should have been admitted. To support this ruling, instead of citing specific cases which are of little value save as they may enable us to deduce the general rules applicable, we call particular attention to chapter XLVIII, page 202, volume V of Dean Wigmore's monumental work on evidence, and chapter LVIII, page 57, volume VI of the same (3d ed.). In fact most of the two volumes cited are devoted to the hearsay rule and its exceptions and the numerous modifica-

tions, statutory and judicial, which have been found essential by countless courts to obviate injustice which would so frequently result from its strict application.

3. The trial court was in error in directing that the commission make a specific award. The facts are to be found by the commission, not the court. Where it appears, as here, that the commission erroneously rejected the only evidence which might have supported an award for claimants the cause should be returned to the commission with directions to admit and consider such evidence and any other properly admissible, and make such award as the record justifies.

The judgment is accordingly reversed with directions to return the cause to the commission and with instructions to proceed in harmony herewith.

MR. JUSTICE GOUDY not participating.